IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                          CASE NO: 3:18-CR-78

GEORGE ROBERT EVERHART,

        Defendant**.**

## MOTION TO SUPPRESS STATEMENT AND TO EXTEND THE MOTION DEADLINE

Defendant, GEORGE ROBERT EVERHART, through counsel and pursuant to U.S. Const. amend. V moves this Honorable Court to suppress any statements made to law enforcement officers when they came to his place of employment or evidence obtained as a result. Mr. Everhart has filed a motion to extend the motion deadline (Doc. 17) and renews that request here to allow Mr. Everhart to develop the facts and evidence to support this motion.

     Mr. Everhart attaches the recording of the interview as Exhibit 1 to this motion and incorporates it by reference as if fully set out herein.[1] When the police came to Mr. Everhart's work, they initially told Mr. Everhart twice that he was not under arrest and not going to jail. Ex. 1. They said it categorically and without qualification. Id. The police told Mr. Everhart they wanted to speak with him about his email account. Id.

     Mr. Everhart told the police that he had no idea why they would be interested in his email account. Ex. 1. Mr. Everhart denied knowing anything about images uploaded to a Google photo

---

[1] Mr. Everhart will file a motion to file Exhibit 1 under seal.

account. Ex. 1. Mr. Everhart identified his email account and stated that he did not know why he had been locked out of it and affirmed that he only checked the account for email, bills and subscriptions. Ex. 1. The police asked Mr. Everhart what he knew about images being uploaded to the account and Mr. Everhart responded that his honeymoon was the only time that he had uploaded images from his phone. Ex. 1. In response to a question from the police, Mr. Everhart stated that he did not anything about illegal pictures of children being uploaded, but that given that information, he would guess that was why his email account had been closed. Ex. 1. The police asked Mr. Everhart about child pornography on his account and Mr. Everhart stated that there shouldn't be any child pornography uploaded to his account. Ex. 1. The police then said that there was child pornography on his account and some of it was his step daughter and that they were going to show him some images so that he could "explain" them. Ex. 1.

Upon being shown the images, Mr. Everhart said, "There ain't no way" and the officer told Mr. Everhart to tell him how it happened and Mr. Everhart said, "I don't know." Ex. 1. Mr. Everhart said, "I'm honest right now. I don't know" Ex. 1. The officer said, "I don't believe you're honest." Ex. 1. The officer then said in a much sharper tone than he had used before, "Well, I'm going to tell you, just a denial is just not going to carry the day." Ex. 1. Mr. Everhart said he didn't know about the pictures. The officer told him to tell him what he did know.Ex. 1. Mr. Everhart stated that there were some emails sent to him and he had opened the attachment and looked at the videos. Ex. 1. The officer then showed Mr. Everhart a picture of his step daughter's bedroom and his step daughter's panties. Ex. 1. The officer then said, "We photographed those this morning, so I'm asking you now to be honest with me. Again, you're not under arrest, but this is not going to go away and simply saying that I don't know anything about

it, that's not carrying the day. So if you want to get something going for yourself, now's the time." Ex. 1. Mr. Everhart then began to incriminate himself.

"The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), citing *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941). Accordingly, the Supreme Court has long held that "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 474 U.S. 104, 109, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), citing *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936)). In addition to violating the Fifth Amendment's Due Process Clause, coerced confessions also violate the Fifth Amendment's right against self-incrimination. *Withrow v. Williams*, 507 U.S. 680, 688, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). The unreliability of confessions and their prejudicial effect has been well-established by the study of wrongful convictions. E.g., Samuel Gross et al., Exoneration in the United States, 1989-2012: Report by the National Registry of Exonerations, 58, 60, https://www.law.umich.edu/special/exoneration/Documents/exonerations_us_1989_2012_full_report.pdf; Samuel Gross et al., For 50 Years, You've Had "The Right to Remain Silent," The National Registry of Exonerations, False Confessions (June 12, 2016), http://www.law.umich.edu/special/exoneration/Pages/falseconfessions.aspx. See also e.g., *Dassey v. Dittmann*, 877 F.3d 297, 332-33 (7th Cir. 2017) (Wood, J., dissenting).

> Our long-held idea that innocent people do not confess to crimes has been upended by advances in DNA profiling. We know now that in approximately 25% of homicide cases in which convicted persons have later been unequivocally exonerated by DNA evidence, the suspect falsely confessed to committing the crime

*Dassey*, 877 F.3d at 333.

As the Supreme Court correctly observed, "[A] criminal law system which comes to depend on the confession will, in the long run, be less reliable and more subject to abuses than a system relying on independent investigation." *Berghuis v. Thompkins*, 560 U.S. 370, 403-04, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) (internal citations omitted).

When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary. E.g., *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003). In deciding the voluntariness of a confession, the court looks to the totality of the circumstances. *Johnson*, 351 F.3d at 260. The totality of the circumstances encompasses "the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); see also *Withrow v. Williams*, 507 U.S. 680, 693-94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (collecting relevant factors).

Psychological coercion can render a confession involuntary. *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (holding that police threats that the defendant's young children and the financial aid upon which her family depended would be taken away if she did not cooperate rendered her statement involuntary); *Arizona v. Fulminante*, 499 U.S. 279, 287-88, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Miller v. Fenton*, 474 U.S. 104, 109, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *Schneckloth*, 412 U.S. at 226. The Sixth Circuit holds that "Police

promises of leniency and threats of prosecution can be objectively coercive." *Johnson*, 351 F.3d at 261. Offers of leniency made during a police interrogation have a coercive effect, *Williams v. Withrow*, 944 F.2d 284, 289 (6th Cir.1991), rev'd on other grounds, 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993), though a promise to speak with the prosecutor about a defendant's cooperation does not automatically render a confession coerced. *United States v. Stokes*, 631 F.3d 802, 809 (6th Cir.2011). In general, police promises of leniency and threats of prosecution may be coercive if they are "broken or illusory." *Johnson*, 351 F.3d at 262 (finding a promise of leniency was not coercive because the police refrained from prosecuting a third party as promised). An illusory promise is one that "lacks substance ... [and] does not actually commit the police to undertake or refrain from any particular course of action." *Id.* at 262 n. 1.

In this case, the police stated that Mr. Everhart was not going to jail and was not under arrest. However, when Mr. Everhart denied any knowledge of the photographs, the police told him, "Well, I'm going to tell you, just a denial is just not going to carry the day." Ex. 1. Then the police then followed that up by telling Mr. Everhart, "Again, you're not under arrest, but this is not going to go away and simply saying that I don't know anything about it, that's not carrying the day. So if you want to get something going for yourself, now's the time." Ex. 1. The clear implication of that statement is that the way for Mr. Everhart to "get something going for himself" and stay out of jail is to confess and the statement carries an implicit threat that the police will arrest Mr. Everhart, if he continues to say he doesn't know anything about it. *Johnson*, 351 F.3d at 262 and n. 1.

During the interview with police, Mr. Everhart made disclosures about his background that could render him particularly compliant to authority and susceptible to coercion. *Schneck-*

*loth v. Bustamonte*, 412 U.S. at 226 (totality of the circumstances contemplates characteristics of the accused). In order to properly support this motion, counsel need more time to investigate Mr. Everhart's background. See e.g., Iris Blandón-Gitlin et al., *Jurors Believe Interrogation Tactics Are Not Likely to Elicit False Confessions: Will Expert Witness Testimony Inform Them Otherwise?*, 17 PSYCHOL., CRIME & L. 239 (2011) (discussing characteristics of the accused that can lead to false confessions). Additionally, there are recognized psychological tests for susceptibility such as the Gudjonsson Suggestibility Scales. Defendant needs more time to determine whether an expert witness would substantially assist the court in deciding the motion. Defendant has been working diligently to prepare his case, including this motion, but has simply not been able to do so within the month since the issuance of the indictment. Defendant has filed his motion out of an abundance of caution to comply with the current motion deadline, but respectfully asks the court for more time to develop the facts in support of the motion through both investigation and through possible expert testimony.

WHEREFORE, for the foregoing reasons, and for any other reasons that the Court may deem just and proper, Mr. Everhart respectfully moves the Court to extend the motion deadline in this case beyond July 19, 2018, and to suppress his statement to the police and any resultant evidence.

Respectfully submitted this the 19th day of June, 2018.

                                                             /s/T. Scott Jones

                                                           T. Scott Jones
                                                           Gena Lewis
                                                           BANKS & JONES
                                                           2125 Middlebrook Pike
                                                           Knoxville, TN 37921

Office Phone: (865) 546-2141
Fax: (865) 546-5777

*Counsel for Defendant George Robert Everhart*

CERTIFICATE OF SERVICE

I, T. Scott Jones, counsel for Plaintiff hereby certify that on July 19, 2018, I served a copy of **Motion to Suppress and to Extend the Motion Deadline** through CM/ECF which will serve all counsel of record.

Respectfully submitted,

_/s/T. Scott Jones__